ROSS-SPILLER GLOVE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10212.   Promulgated March 13, 1928.

*Harold C. Anderson*, *C. P. A.*, for the petitioner.
*Julian G. Gibbs*, *Esq.*, for the respondent.

OPINION.

MURDOCK: We have set out above the method used by the Commissioner in computing the petitioner's invested capital. The petitioner now concedes that in that computation the reductions lettered "(b)," "(c)" and "(d)" were proper, but contends that the Commissioner erred in reducing invested capital by $30,649.66 for the reason, as stated in his reduction lettered "(a)," that the amount represented an "excess of net value of assets set up by taxpayer at January 1, 1917, over par value of preferred stock issued therefor." The petitioner argues that it is immaterial in this case whether or not such surplus so set up was paid-in surplus for invested capital purposes, because it had on December 31, 1918, an undisputed surplus of $52,994.38 which must have been either paid in or earned and as such should be included in invested capital for 1919.

In order to prove that this surplus was not overstated on its books the petitioner alleged and attempted to prove, first, that its assets on December 31, 1918, were accorded values which could properly be included in invested capital, and that there were no undisclosed or unascertained liabilities not recorded on the books of account. Its proof on the value of certain of its assets might not be satisfactory if the Commissioner had questioned such value, but he made the reduction for a totally different reason. He does not claim that the accounts receivable contained any bad or doubtful accounts, or that the inventories are incorrect. Under the circumstances we think the proof is sufficient to establish the point made by the petitioner.

The next step in the proof offered by the petitioner was to show that only one of the assets originally acquired and set up on its books on January 1, 1917, remained on its books and was shown as an asset on December 31, 1918, namely, the asset described as "Machinery, Tools & Fixtures," all of the other assets acquired and liabilities assumed on January 1, 1917, having been sold, disposed of, or otherwise accounted for in income before January 1, 1919, as realized gains or losses. It showed that its accounts receivable as of December 31, 1918, included no account shown as an account receivable on January 1, 1917, that is, that none of its original accounts receivable were still outstanding on December 31, 1918; that all of the goods, materials and supplies in its January 1, 1917, inventory were sold as finished goods before December 31, 1918, and

were not represented in any item on its December 31, 1918, balance sheet, except perhaps in the item of accounts receivable; and that all of its liabilities as of January 1, 1917, were paid before December 31, 1918, so that by its method of keeping its books and reporting its income the petitioner by January 1, 1919, had accounted for any gains or losses on its January 1, 1917, assets and liabilities.

It also proved that the machinery, tools and equipment which it acquired on January 1, 1917, were worth more than $21,300 on that date; that no appreciation on these assets was included in the December 31, 1918, balance sheet; that the only change in the account was that $1,300 was charged off it before December 31, 1918, due to the sale of some of the machinery and fixtures originally acquired. The Commissioner does not indicate that any adjustment need be made in this asset account because of appreciation and he has made none on account of depreciation. He has never contended that the original machinery, tools, and fixtures acquired by the petitioner were not paid in for stock or shares, or that they did not cost the petitioner $21,300. From the entire record we gather that the respondent raises a question of the *excess value* of assets paid in for stock over the par value of the stock, rather than one as to whether or not those assets were *paid in* for stock specifically issued therefor.

We think that it is apparent from the Commissioner's computation that he concedes the right of the petitioner to include in its invested capital as cash or property paid in for stock or shares an amount equal to the par value of its stock outstanding on December 31, 1918, to wit, $26,700, plus $62,175; and that he attacks the petitioner's surplus only. This surplus of $52,994.38 on December 31, 1918, was all surplus (paid in and/or earned) or undivided profits. Therefore the petitioner has proven its case in so far as the question of invested capital is concerned. The amount of $30,649.66 was erroneously deducted from its surplus in the computation of its invested capital for the year 1919.

An appraiser, whose qualifications, if any, were not satisfactorily shown, stated that appraisers usually used rates of from 3 to 5 per cent for depreciation and that in connection with an appraisal of the petitioner's machinery he had used various rates, but never one in excess of 5 per cent. Evidence such as this does not satisfactorily establish a proper rate for the computation of a deduction for exhaustion of these assets and consequently we must hold that the petitioner has not established its right to such deduction.

*Judgment will be entered in accordance with the foregoing opinion on notice of 15 days, under Rule 50.*